## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### CASE NO.

**SECURITIES AND EXCHANGE COMMISSION,**
801 Brickell Avenue, Ste. 1800
Miami, FL 33131

|  |  |
|---|---|
| **Plaintiff,** | Case: 1:12-cv-01052 |
|  | Assigned To : Roberts, Richard W |
|  | Assign. Date : 6/26/2012 |
| v. | Description: General Civil |

**AMMB CONSULTANT SENDIRIAN BERHAD**
P.O. Box 10233
Kuala Lumpur, Malaysia
N8 50200
        **Defendant.**

_____ /

### COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges as follows:

### I.    INTRODUCTION

1.    From 1996 to 2007, AMMB Consultant Sendirian Berhad ("AMC"), a sub-adviser to The Malaysia Fund, Inc. ("Fund"), charged the Fund more than $1.8 million in investment advisory fees for certain advisory services AMC did not provide.    The Fund, a closed-end investment company registered with the Commission, was AMC's only client.    Each year between 1996 and 2007, AMC misrepresented to the Fund's board of directors that AMC was providing certain services it, in fact, was not providing.    Based on AMC's misrepresentations each year, the board renewed AMC's contract and approved its advisory fees.

2.    During the 11-year relevant time period, AMC had a Research and Advisory Agreement with the Fund and the Fund's primary investment adviser, Morgan Stanley Investment Management, Inc. ("MSIM"), to serve as the Fund's sub-adviser in Malaysia and

provide investment advisory services for the benefit of the Fund.  During the relevant period, in connection with the Fund's annual investment advisory contract approval process pursuant to Section 15(c) of the Investment Company Act of 1940 ("Investment Company Act"), AMC provided reports to MSIM for submission to the Fund's board that falsely claimed AMC was providing specific research, intelligence, and advice to MSIM.  In reality, AMC's advisory services were limited to preparing two minor reports a month that contained only publicly available information and that MSIM's portfolio management team neither requested nor used during the relevant time period.

3.      In addition, AMC failed to adopt and implement policies and procedures reasonably designed to prevent misrepresentations to its client regarding the research and advisory services it was providing.  In 2006 and 2007, AMC certified to the Fund that AMC had adopted and implemented policies, procedures, and controls reasonably designed to prevent violations of the laws, rules, or regulations applicable to its advisory business.  In fact, AMC had not adopted or implemented policies and procedures reasonably designed to prevent violations of the Investment Advisers Act of 1940 ("Advisers Act"), and its rules.

4.      By engaging in the conduct described above and more fully described below, AMC violated Sections 206(2) and 206(4) of the Advisers Act, 15 U.S.C. §§ 80b-6(2), 80b-6(4), and Advisers Act Rule 206(4)-7, 17 C.F.R. § 275.206(4)-7, and Section 15(c) of the Investment Company Act, 15 U.S.C. § 80a-15(c).   AMC also breached the fiduciary duty it owed to the Fund under Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a-35(b).

## II.     JURISDICTION AND VENUE

5.      The Court has jurisdiction over this action pursuant to Section 214 of the Advisers Act, 15 U.S.C. § 80b-14, and Sections 36(b) and 44 of the Investment Company Act, 15 U.S.C. §§ 80a-35, 80a-43.

6.      The Court has personal jurisdiction over AMC because AMC has consented to the United States District Court for the District of Columbia exercising jurisdiction over its person in this case.  In addition, as alleged in this complaint, AMC had sufficient contacts with the United States, and the violations alleged in this complaint arose directly from those contacts.  More specifically, the Fund, which was AMC's sole advisory client during the period of events alleged in this complaint, was incorporated in Maryland during the entire time.  AMC was registered as an investment adviser with the Commission from 1987 to 2008, and had the Research and Advisory Agreement with the Fund from 1987 to 2007.  Each year from 1996 to 2007, AMC transmitted a report to Morgan Stanley executives in New York for the Fund's board.

7.      Venue is proper in the District of Columbia because AMC is a foreign corporation, i.e., an alien, so venue is proper in any district.  In addition, AMC has consented to venue in the District of Columbia.

## III.     DEFENDANT AND RELEVANT ENTITIES

### A.     Defendant

8.      AMC, a Malaysian corporation located in Kuala Lumpur, Malaysia, was registered with the Commission as an investment adviser from May 8, 1987 until February 12, 2008, when it withdrew its registration.  AMMB Holdings Berhad, one of the largest banking groups in Malaysia, is ultimately AMC's corporate parent.

**B.**    **Relevant Entities**

9.     The Fund is a Maryland corporation, formed in 1987 as a closed-end investment company. MSIM launched and manages the Fund.

10.     MSIM, a Delaware corporation, is a registered investment adviser and wholly owned subsidiary of Morgan Stanley. MSIM has been the primary investment adviser to the Fund since its inception in 1987.

## IV.    FACTUAL ALLEGATIONS

11.     The Fund is a closed-end investment company that is part of the Morgan Stanley funds complex. Approximately 100 institutional and retail funds or portfolios currently comprise that complex. A single board of directors, all but one of whose members are not "interested" within the meaning of the Investment Company Act, oversees the funds. The Fund's investment objective is long-term capital appreciation through investment in Malaysian companies' equity securities. As of September 30, 2011, the Fund reported net assets of $75.1 million.

12.     MSIM serves as the primary investment adviser for the Fund pursuant to a renewable written advisory agreement with the Fund, the first one of which was effective May 1, 1987. Under the agreement, Morgan Stanley provides the Fund with investment management services, including investment trading and maintaining the Fund's books and records.

13.     Pursuant to a Research and Advisory Agreement with the Fund and MSIM, AMC served as a sub-adviser to the Fund from its inception until the parties terminated the agreement. This agreement was separate from MSIM's advisory agreement with the Fund. AMC's Research and Advisory Agreement specified that AMC would register with the Commission as an investment adviser under the Advisers Act and furnish MSIM "such investment advice, research and assistance, as [MSIM] shall from time to time reasonably request." The Research and

Advisory Agreement also provided for the Fund's board to annually review and approve its terms. AMC did not exercise investment discretion or authority over any of the assets in the Fund.

14.     The Research and Advisory Agreement provided the Fund would pay AMC a fee at an annual rate of 0.25% of the Fund's first $50 million of average weekly net assets; 0.15% of the next $50 million of average weekly net assets; and 0.10% of the average weekly net assets in excess of $100 million. During the relevant time period, the Fund paid AMC advisory fees totaling $1,845,000.

### Investment Advisory Contract Renewal Process

15.     Under Section 15(a) of the Investment Company Act, 15 U.S.C. § 80a-15(a), it is unlawful for any person to serve or act as investment adviser to a registered investment company except pursuant to a written contract that satisfies certain criteria and unless a majority of the fund's outstanding voting securities has approved of the contract.

16.     Section 15(c) of the Investment Company Act, 15 U.S.C. § 80a-15(c), requires that the terms of any contract or agreement, by which a person undertakes regularly to serve or act as investment adviser of a registered investment company, and any renewal of such a contract, be approved by a vote of a majority of a fund's disinterested directors or trustees at a meeting called for the purpose of voting on such approval. Section 15(c) also makes it the duty of an investment adviser of a registered investment company to furnish such information as may reasonably be necessary for the investment company's directors to evaluate the terms of any such contract. The process by which a fund board evaluates and approves the renewal of an investment advisory contract is commonly referred to as the "15(c) process."

17.    During the period alleged in this complaint, as part of the Fund's 15(c) process, AMC prepared annual reports to the Fund's board on the "Continuance of [AMC's] Research and Advisory Agreement" ("Report").   The stated purpose of the Report was to provide the board with information AMC believed "may reasonably be necessary for the Board to evaluate terms of the sub-adviser agreement."   AMC identified its personnel in the Reports and included its unaudited financial statements.   AMC also represented the following to the Fund's board in each of the Reports:

RESEARCH AND INVESTMENT ADVISORY SERVICES PROVIDED TO THE INVESTMENT ADVISER OF THE FUND

(a) To research on companies listed on Bursa Malaysia with a view to identifying and recommending stocks and shares for investment by [MSIM].

(b) To prepare statistical reports with a view to assisting [MSIM] in making investment decisions.

(c) To provide market intelligence on corporate developments and activities and to keep [MSIM] informed of corporate proposals; and

(d) To advise [MSIM] on changes in economic and political conditions, monetary and fiscal policies in Malaysia.

18.    Contrary to the representations it made to the Fund's board, AMC did not provide any of these services.   Instead, AMC provided two monthly reports that MSIM neither requested nor used in its management of the Fund during the relevant time period.   The first was a two-page list of the market capitalization of the Kuala Lumpur Composite Index.   The second was a two-page comparison of the monthly performance of the Fund against other Malaysian equity trusts. Both monthly reports were based on readily available public information.

19.     For twelve years, the Fund's board relied on the misrepresentations in AMC's annual Reports regarding the advisory services AMC provided when, each year, it approved the continuation of AMC's advisory contracts. This included approving AMC's compensation.

20.     In late 2007, the Commission staff conducted an examination of the Fund's relationship with AMC.  In February 2008, the board terminated AMC's Research and Advisory Agreement with the Fund.

21.     In addition, AMC failed to adopt and implement written policies and procedures tailored to the firm's advisory business that were reasonably designed to detect and prevent potential misrepresentations to the Fund's board regarding the research and advisory services it was actually providing.

22.     In 2006 and 2007, AMC certified to the Fund that AMC had adopted and implemented policies, procedures, and controls reasonably designed to prevent violation of the laws, rules, or regulations applicable to its business, which include the violations alleged in this complaint.  In fact, AMC had not adopted or implemented policies and procedures reasonably designed to prevent violations of the Advisers Act and its rules.

## V.     VIOLATIONS

### COUNT I

#### Violation of Section 15(c) of the Investment Company Act

23.     The Commission repeats and realleges paragraphs 1 through 22 of its Complaint.

24.     From at least 1996 through 2007, AMC failed to furnish such information as was reasonably necessary to evaluate the terms of a contract whereby AMC undertook regularly to serve or act as investment adviser of a registered investment company.

25.     By reason of the foregoing, AMC violated, and, unless enjoined, is reasonably

likely to continue to violate, Section 15(c) of the Investment Company Act, 15 U.S.C. § 80a-15(c).

## COUNT II

### Violation of Section 206(2) of the Advisers Act

26.     The Commission repeats and realleges paragraphs 1 through 22 of its Complaint.

27.     From at least 1996 through 2007, AMC, while acting as an investment adviser, directly or indirectly, by use of the mails or any means or instrumentality of interstate commerce, engaged in transactions, practices or courses of business which operated as a fraud or deceit upon a client or prospective client.

28.     By reason of the foregoing, AMC directly or indirectly violated and, unless enjoined, is reasonably likely to continue to violate, Section 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(2).

## COUNT III

### Violation of Section 206(4) of the Advisers Act and Rule 206(4)-7

29.     The Commission repeats and realleges paragraphs 1 through 22 of its Complaint.

30.     From at least 1996 through 2007, AMC, while acting as an investment adviser registered with the Commission, directly or indirectly, by use of the mails or any means or instrumentality of interstate commerce, engaged in acts, practices, or courses of business which were fraudulent, deceptive or manipulative by providing investment advice to a client and failing to adopt, implement, and review written policies and procedures reasonably designed to prevent violations, by it or its supervised persons, of the Advisers Act and the rules that the Commission has adopted under the Advisers Act.

31.     By reason of the foregoing, AMC violated and, unless enjoined, is reasonably

likely to continue to violate, Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Advisers Act Rule 206(4)-7, 17 C.F.R. § 275.206(4)-7.

## COUNT IV

### Breach of Fiduciary Duty Under Section 36(b) of the Investment Company Act

32.     The Commission repeats and realleges paragraphs 1 through 22 of its Complaint.

33.     AMC, while serving or acting as an investment adviser to a registered investment company, engaged in acts or practices constituting a breach of fiduciary duty within the meaning of Section 36(b) of the Investment Company Act with respect to the receipt of compensation for services, or of payments of a material nature to AMC, or an affiliated person of AMC, by the registered investment company.  AMC's fees were excessive in light of the services it performed.

34.     By reason of the foregoing, AMC breached, and, unless enjoined, is reasonably likely to continue to breach, its fiduciary duty within the meaning of Section 36(b) of the Investment Company Act with respect to the receipt of compensation for services, or of payments of a material nature to AMC, or an affiliated person of AMC, by the registered investment company.

## VI.    RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### A.

### Declaratory Relief

Declare, determine, and find that AMC has committed the violations of the federal securities laws and breaches of fiduciary duty created by the federal securities laws alleged in this Complaint.

**B.**

**Permanent Injunction**

Issue a permanent injunction enjoining AMC, its agents, servants, employees, attorneys, representatives, and all persons in active concert or participation with it, and each of them, from directly or indirectly violating Sections 206(2) and 206(4) of the Advisers Act, 15 U.S.C. §§ 80b-6(2), 80b-6(4), and Advisers Act Rule 206(4)-7, 17 C.F.R. § 275.206(4)-7, and Section 15(c) of the Investment Company Act, 15 U.S.C. § 80a-15(c), and from directly or indirectly engaging in any act or practice constituting a breach of fiduciary duty within the meaning of Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a-35(b), with respect to the receipt of compensation for services or of payments of a material nature to AMC, or any affiliated person of AMC, by a registered investment company for which AMC serves or acts as investment adviser.

**C.**

**Disgorgement**

Issue an Order directing AMC to disgorge all ill-gotten gains resulting from the acts or courses of conduct alleged in this Complaint.

**D.**

**Penalties**

Issue an Order directing AMC to pay civil money penalties pursuant to Section 209 of the Advisers Act, 15 U.S.C. §80b-9.

**E.**

**Further Relief**

Grant such other relief as this Court may deem just and appropriate.

**F.**

**Retention of Jurisdiction**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this court.

June 22, 2012                                              Respectfully submitted,

                               By:   _____

                                     Edward D. McCutcheon
                                     Senior Trial Counsel
                                     Florida Bar No. 683841
                                     Direct Dial: (305) 982-6380
                                     E-mail: mccutcheone@sec.gov
                                     *Lead Attorney*

                                     Chad Alan Earnst
                                     Assistant Regional Director
                                     Florida Bar No. 0412899
                                     Direct Dial No. (305)982-6355

                                     Christine A. Lynch
                                     Senior Investigations Counsel
                                     Massachusetts Bar No. 631424
                                     Direct Dial No. (305)982-6312

                                     Jessica M. Weiner
                                     Senior Counsel
                                     Florida Bar No. 0148423
                                     Direct Dial No. (305)982-6395

                                     Attorneys for Plaintiff
                                     **SECURITIES AND EXCHANGE
                                     COMMISSION**
                                     801 Brickell Avenue
                                     Suite 1800
                                     Miami, FL 33131
                                     Telephone: (305) 982-6300
                                     Facsimile: (305) 536-4154